IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| ASTER YEMER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 1:18-cv-677 |
| | ) | |
| UNITED STATES CITIZENSHIP AND | ) | |
| IMMIGRATION SERVICES, | ) | |
|     Defendant. | | |

## MEMORANDUM OPINION

Plaintiff Aster Yemer, an Ethiopian citizen who has resided in the United States since November 2009, initiated this action pursuant to 8 U.S.C. § 1421(c), challenging the United States Citizenship and Immigration Service's ("USCIS") denial of her naturalization application. Yemer contends the denial was improper because USCIS erroneously concluded that Yemer was not lawfully admitted for permanent residence. USCIS responds that its conclusion was correct and that Yemer's application fails for the additional reason that Yemer cannot establish that she has good moral character.

At issue now are the parties' cross-motions for summary judgment. The parties, by counsel, have fully briefed and argued the motions, and they are now ripe for disposition. For the reasons set forth herein, USCIS's motion must be granted and Yemer's motion must be denied.

I.

Summary judgment is appropriate only where there are no genuine disputes of material fact, Fed. R. Civ. P. 56. Accordingly, the record facts as to which no genuine dispute exists must

1

first be identified. The following undisputed facts are derived from the parties' respective factual narratives and their responses thereto:[1]

- Yemer is a native and citizen of Ethiopia.

- Yemer gave birth to a daughter, E.Y.B., in Addis Ababa, Ethiopia in 1999. Yemer was not married to E.Y.B.'s father. As is customary in Ethiopia when a child is born to unwed parents, Yemer's mother cared for E.Y.B. Yemer, Yemer's mother, and E.Y.B. lived together in Addis Ababa.[2]

- In late 2008, Yemer submitted an electronic entry for the Diversity Immigration Visa Program ("DV program"). Yemer did not include E.Y.B. on her Electronic Diversity Entry Form ("eDV Form").

- Yemer was selected by lottery for further processing in the DV program, and she completed a DS-230 Visa Application, Application for Immigrant Visa and Alien Registration, ("Form DS-230") in June 2009. In response to the question instructing Yemer to "List Names, Dates and Places of Birth, and Addresses of ALL Children," Yemer wrote "NA."

- In connection with the process of submitting Form DS-230, Yemer was placed under oath and interviewed by a consular official in Ethiopia on November 4, 2009. During the interview, Yemer stated that she did not have any children. She also swore that "all statements which appear in [her DS-230] . . . are true and complete to the best of [her] knowledge and belief."[3]

- The Department of State granted Yemer a diversity immigrant visa, and Yemer was admitted into the United States as a lawful permanent resident on November 28, 2009.

- On May 13, 2015, Yemer, seeking to become a United States citizen, filed a Form N-400,

---

[1] Both parties failed to comply with Local Rule 56(b), which directs a movant for summary judgment to include a section listing, in numbered-paragraph form, all material facts as to which the movant contends no genuine dispute exists. The nonmovant must then respond, also in numbered-paragraph form, to each numbered paragraph, either admitting or contesting the putative undisputed fact and citing admissible record evidence to establish a genuine dispute of material fact. This requirement was reiterated in an Order previously issued in this case. *Yemer v. USCIS*, No. 1:18-cv-677 (E.D. Va. Aug. 6, 2018) (Order). Although the parties failed to comply and instead submitted a narrative of facts, a careful review of those narratives discloses that the essential facts are undisputed.

[2] Yemer lived with her father's family for the first four months after E.Y.B.'s birth. The record does not disclose whether E.Y.B. lived with Yemer or Yemer's mother during this time.

[3] Yemer's counsel disputes that Yemer was placed under oath or orally swore that statements in her Form DS-230 were true and correct during this interview, but the dispute is not genuine. Yemer's counsel merely asserts, in a conclusory fashion, that she "objects to Defendant's statement in its statement of 'undisputed facts' that '[Yemer] was placed under oath' at the consular interview and that [Yemer] 'orally' swore that [Yemer's] statements in the DS-230 form were true and correct.'" The INA requires that "each application for an immigrant visa shall be signed by the applicant in the presence of the consular officer, and verified by the oath of the applicant administered by the consular officer." 8 U.S.C. § 1202(e). *See also* 22 C.F.R. § 42.67(a)(2). Yemer's counsel fails to cite any record evidence that this did not occur. Indeed, Yemer's counsel does not even explicitly allege that it did not occur; rather, she merely "objects" to the USCIS's assertions.

Application for Naturalization, with USCIS. Form N-400 instructed Yemer to list all children, and Yemer listed E.Y.B. Additionally, Yemer responded "no" to the following two questions: (i) "Have you **ever** given any U.S. Government official(s) **any** information or documentation that was false, fraudulent, or misleading?" and (ii) "Have you **ever** lied to any U.S. Government official to gain entry or admission into the United States or to gain immigration benefits while in the United States?"

- In connection with her application for naturalization, Yemer was interviewed under oath[4] on September 1, 2015. The USCIS official asked Yemer whether she (i) had ever given a United States government official information or documentation that was false, fraudulent, or misleading or (ii) had ever lied to any U.S. government official to gain entry or admission into the United States or to gain immigration benefits while in the United States. Yemer orally answered "no" to both questions. Yemer also confirmed that she knew that E.Y.B. was her daughter when she filled out Form DS-230 in 2009 and that she has always known her daughter. Finally, Yemer, under oath, confirmed that the contents of her Form N-400 were "true and correct."

- USCIS sent Yemer a letter on March 7, 2016 denying her naturalization application because she was not lawfully admitted for permanent residence. USCIS reaffirmed its decision to deny Yemer's naturalization application on February 9, 2018 following a hearing.

Yemer subsequently brought this action seeking *de novo* review of her naturalization application. In her motion for summary judgment, Yemer requests remand to USCIS with instructions to grant her naturalization application. USCIS opposes this relief and, in its cross-motion for summary judgment, seeks a finding that Yemer is not eligible for naturalization.

---

[4] Yemer's counsel disputes that Yemer was under oath during this interview, but the dispute is not genuine and does not bar summary judgment. Yemer's counsel merely asserts that "Plaintiff also objects to Defendant's statement that Plaintiff's N-400 interview[] on September 1, 2015 . . . w[as] 'under oath.'" Yet, Yemer's counsel has cited no record evidence to support the position that Yemer was not under oath during this interview. This lack of evidence is unsurprising, as regulations require that a naturalization applicant be placed under oath during her interview. *See* 8 C.F.R. § 335.2(a) & (c). Furthermore, the USCIS has provided a declaration of the USCIS officer who conducted Yemer's naturalization interview. The declaration states that Yemer's interview was conducted under oath and that Yemer orally confirmed her answers to the following two questions: (i) "Have you **ever** given any U.S. Government official(s) **any** information or documentation that was false, fraudulent, or misleading?" and (ii) "Have you **ever** lied to any U.S. Government official to gain entry or admission into the United States or to gain immigration benefits while in the United States?" In his declaration, the USCIS official further declared that it was his practice to place a red check mark next to questions to indicate that he had asked the question orally and that the applicant had orally confirmed her answer. Red question marks appear next to both of these questions on Yemer's Form N-400. Accordingly, Yemer's counsel's dispute that Yemer was not under oath during this interview is not genuine and fails to preclude summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (noting that a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

## II.

The summary judgment standard is too well settled to require extensive elaboration. In essence, summary judgment is appropriate under Rule 56, Fed. R. Civ. P., only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court must "view the facts and draw all reasonable inferences in the light most favorable to the non-moving party." *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). Importantly, however, the non-movant may not rely on "mere allegations." *Id.* (citation omitted). Instead, the non-movant "must set forth specific facts that go beyond the mere existence of a scintilla of evidence." *Id.* (internal quotation marks and citation omitted). Given these principles, it is clear the material facts supporting summary judgment are undisputed and require that USCIS's motion for summary judgment be granted.

## III.

The Immigration and Nationality Act ("INA") provides for judicial review of the denial of naturalization applications. Specifically, the INA provides that

> A person whose application for naturalization under this subchapter is denied . . . may seek review of such denial before the United States district court for the district in which such person resides . . . . Such review shall be *de novo*, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing *de novo* on the application.[5]

---

[5] Although Yemer has not argued that summary judgment is inappropriate in light of her request for *de novo* review of her application, it is worth noting that the several circuits that have considered the question have concluded that summary judgment satisfies § 1421(c)'s *de novo* hearing requirement. *See Kariuki v. Tarango*, 709 F.3d 495, 500–03 (5th Cir. 2013); *Abulkhair v. Bush*, 413 F. App'x 502, 507 n. 4 (3d Cir. 2011); *Chan v. Gantner*, 464 F.3d 289, 295–96 (2d Cir. 2006).

4

8 U.S.C. § 1421(c). Accordingly, judicial review of the denial of a naturalization application is conducted *de novo*, and review is not limited to the administrative record. *See, e.g., Kariuki v. Tarango*, 709 F.3d 495, 502 (5th Cir. 2013); *Chan v. Gantner*, 464 F.3d 289, 291 (2d Cir. 2006).

Importantly, Yemer bears the "heavy burden of proving h[er] eligibility for citizenship." *Cody v. Caterisano*, 631 F.3d 136, 142 (4th Cir. 2011). In particular, when an alien applies for naturalization, "the burden is on the alien applicant to show [her] eligibility for citizenship in every respect." *Berenyi v. Dist. Dir., INS*, 385 U.S. 630, 637 (1967). To that end, "doubts should be resolved in favor of the United States and against the claimant." *Id.* This is so because federal courts "have the power to confer citizenship only 'in strict compliance with the terms of an authorizing statute.'" *Cody v. Caterisano*, 631 F.3d 136, 142 (4th Cir. 2011) (quoting *INS v. Pangilinan*, 486 U.S. 875, 884 (1988)).

An applicant for naturalization must, among other requirements, establish that (i) she is of good moral character and (ii) she was lawfully admitted as a permanent resident. 8 U.S.C. § 1427(a). With respect to the first requirement—good moral character—an applicant for naturalization must establish that, during the five years preceding the filing of her petition, she has been "a person of good moral character." 8 U.S.C. § 1427(a)(3); *see also Berenyi v. Dist. Dir., INS*, 385 U.S. 630, 631 (1967). An applicant "who has given false testimony for the purpose of obtaining any [immigration or naturalization] benefits" during the previous five years is precluded from being found to be a person of good moral character. 8 U.S.C. § 1101(f)(6).

With respect to the second requirement, the INA provides that "no person shall be naturalized unless [s]he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter." 8 U.S.C. § 1429. Importantly, it is not enough that an applicant was admitted to the United States as a lawful permanent resident; as

the Fourth Circuit has made clear, "to establish that she was lawfully admitted for permanent residence, [an applicant] must do more than simply show that she was granted [lawful permanent resident] status; she must further demonstrate that the grant of that status was in substantive compliance with the immigration laws." *Injeti v. USCIS*, 737 F.3d 311, 316 (4th Cir. 2013). Given this requirement, USCIS argues that Yemer cannot, as a matter of law, establish either that she is of good moral character or that she was lawfully admitted as permanent resident.

A.

An applicant for naturalization must establish that, during the five years preceding the filing of her petition, she has been "a person of good moral character." 8 U.S.C. § 1427(a)(3); *see also Berenyi v. Dist. Dir., INS*, 385 U.S. 630, 631 (1967). The INA instructs that "[n]o person shall be regarded as, or found to be, a person of good moral character who, during [the previous five years] . . . has given false testimony for the purpose of obtaining any benefits under this chapter." 8 U.S.C. § 1101(f)(6). Only "oral statements made under oath" qualify as testimony that precludes a finding that an applicant has good moral character. *Kungys v. U.S.*, 485 U.S. 759, 780 (1988). And those statements must be made "with the subjective intent of obtaining immigration" or naturalization benefits. *Id.* Importantly, however, the misrepresentation need not be material. *Id.* at 779. As the Supreme Court has explained, § 1101(f)(6) "denominates a person to be of bad moral character on account of having given false testimony if he has told even the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits." *Id.* at 780. Finally, because a naturalization applicant must establish her eligibility for citizenship in every respect, an applicant "bears the heavy burden to prove, by clear and convincing evidence, that [s]he has good moral character." *El-Ali v. Carroll*, 83 F.3d 414 (Table), 1996 WL 192169, at *4 (4th Cir. 1996); *see also Berenyi*, 385 U.S. at 637.

Yemer cannot make this showing; she gave false testimony under oath for the purpose of obtaining naturalization benefits during her September 2015 naturalization interview, and thus § 1101(f)(6) precludes a finding that she possesses good moral character.[6] Specifically, Yemer gave false testimony when she orally answered the USCIS officer's question whether she had ever given any U.S. government official(s) any information or documentation that was false, fraudulent, or misleading in the negative.[7] As detailed below, this statement

(i) qualifies as testimony under § 1101(f)(6),
(ii) was false,
(iii) was made for the purpose of obtaining naturalization benefits, and
(iv) was made within the five-year statutory window.

Accordingly, § 1101(f)(6) bars a finding that Yemer has been a person of good moral character during the requisite period.

To begin with, Yemer's negative response to the USCIS officer's question whether she had ever given any U.S. government official(s) any information or documentation that was false, fraudulent, or misleading qualifies as testimony under § 1101(f)(6). To qualify as testimony under this provision, a statement must be an "oral statement[] made under oath." *Kungys*, 485 U.S. at 780. Yemer was under oath during the naturalization interview,[8] and she orally denied that she had

---

[6] USCIS argues Yemer cannot establish that she has good moral character for the additional reason that she made false statements during her 2009 visa interview, and regulations allow events beyond the five-year statutory period to be considered if they are "relevant to a determination of the applicant's present moral character." 8 C.F.R. § 316.10(a)(2). It is unnecessary to decide whether summary judgment may be granted on this basis, given the dispute whether Yemer made these false statements with the purpose of obtaining immigration benefits, because of the result reached.

[7] USCIS argues Yemer also gave false testimony when she orally responded to the USCIS officer's question whether she had ever lied to any U.S. government official to gain entry or admission into the United States or to gain immigration benefits while in the United States in the negative. USCIS argues this testimony was false because Yemer lied to U.S. government officials to gain entry into this country when, during her November 2009 immigration interview, she stated that she did not have any children and that the statements in her Form DS-230 were true and complete. Summary judgment may not be granted on this basis because it is disputed whether Yemer's purpose in making these statements was to gain immigration benefits.

[8] As discussed in footnote 4, Yemer, by counsel, objects to the assertion that Yemer's interview was under oath. This dispute is not genuine and does not bar summary judgment because USCIS has introduced record evidence that the interview was under oath, and Yemer has failed to produce any record evidence to the contrary.

7

ever given any false, fraudulent, or misleading information or documentation to a U.S. government official. This oral statement under oath thus qualifies as testimony pursuant to § 1101(f)(6). *See Bernal v. I.N.S.*, 154 F.3d 1020, 1023 (9th Cir. 1998) (concluding that "the statements made by an applicant in a naturalization examination are 'testimony' within the meaning of 8 U.S.C. § 1101(f)(6)").

Second, Yemer's statement was clearly false. She denied she had ever given any U.S. government official any information or documentation that was false, fraudulent, or misleading, whereas the undisputed summary judgment record reveals that Yemer told a consular official during her immigration interview in November 2009 that she did not have any children. This was clearly false. Yemer also responded "NA" on her Form DS-230 when instructed to "List . . . ALL Children." Further, Yemer swore during her immigration interview that all statements in her DS-230 were true and complete. These responses were also false because Yemer in fact had a child, E.Y.B.[9] As such, when Yemer denied ever giving a U.S. government official information or documentation that was false, fraudulent, or misleading, the undisputed summary judgment record reflects that Yemer had indeed given such information or documentation. Yemer's statement to the contrary was thus false. *See Bijan v. USCIS*, 900 F.3d 942, 946 (7th Cir. 2018) (concluding that, because a naturalization applicant had failed to disclose that he had children on his visa application, his "testimony . . . that he had never given 'false or misleading information' while 'applying for any immigration benefit' was plainly false").

Third, Yemer's false testimony was plainly provided for the purpose of obtaining naturalization benefits. At the time of her naturalization interview, Yemer knew she had previously

---

[9] Yemer's argument that she was not required to list E.Y.B. on her DS-230 fails for the reasons discussed below. Moreover, Yemer admitted in a sworn statement that, in response to a consular official's question during her November 2009 visa interview, Yemer stated that she did not have children. Admin. R. 25. These oral references to children surely are not controlled by the INA's definition of "child," nor does Yemer argue that they are.

8

given false, fraudulent, or misleading information to a U.S. government official,[10] and yet Yemer denied that she had done so. There can be no doubt that one who falsely denies during a naturalization interview that she has previously given false or misleading information to a government official does so for the purpose of obtaining naturalization benefits. *See Bijan,* 900 F.3d at 946 ("The undisputed facts show that [the naturalization applicant] was aware of the misrepresentation on his visa application *and thus* that he intended to obtain an immigration benefit—naturalization—by denying that he had made it.") (emphasis added). Indeed, Yemer has not established that her purpose in falsely denying she had ever given false, fraudulent, or misleading information to a government official was anything other than obtaining naturalization benefits. *See Berenyi v. Dist. Dir., INS,* 385 U.S. 630, 637 (1967) ("the burden is on the alien applicant to show h[er] eligibility for citizenship in every respect"). Yemer argues she lacked the requisite purpose because she was unaware that she needed to disclose that E.Y.B. was her child during her visa application interview. But it is Yemer's knowledge at the time of her naturalization interview, and not Yemer's knowledge at the time of her visa application interview, that is dispositive here. Whether Yemer was aware of her obligation to disclose E.Y.B. as her child, and thus Yemer's knowledge that she gave false information to a government official, at the time of her visa application interview is immaterial. What is material—and dispositive—is that Yemer gave false information when she denied having children during her visa application interview, that Yemer was well aware that she had given false information during this interview by the time of

---

[10] Yemer's knowledge is apparent from the fact that Yemer listed E.Y.B. on her Form N-400 naturalization application in response to an instruction that she list all children. Yemer thus was aware that E.Y.B. was her child and that she had denied having children during the visa application process.

her naturalization interview,[11] and that Yemer nonetheless denied having ever given false, fraudulent, or misleading information to a government official.

Finally, it is undisputed that Yemer gave this false testimony within the five-year statutory window. Indeed, the testimony was given in connection with Yemer's naturalization application. As such, the undisputed factual record establishes that Yemer has given false testimony for the purpose of obtaining naturalization benefits, and 8 U.S.C. § 1101(f)(6) thus precludes a finding that Yemer was a person of good moral character for the five years preceding the filing of her petition.

Yemer attempts to avoid this conclusion by advancing several arguments, each of which is discussed and rejected below. Yemer first argues that her moral character is beyond the scope of this proceeding because USCIS did not identify Yemer's lack of good moral character as a basis for its denial of her naturalization application. In this respect, Yemer relies on the Ninth Circuit's decision in *De Lara Bellajaro v. Schiltgen*, 378 F.3d 1042, 1043–44 (9th Cir. 2004), which held that review of the denial of a naturalization application was "limited to the ground for the denial." *De Lara Bellajaro* is inapposite here; that decision was based on the interaction between § 1421(c) and 8 U.S.C. § 1429, an interaction that is not relevant here inasmuch as the relevant provision of § 1429 does not operate in this case. Section 1429 provides, in relevant part, that "no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest." The Ninth Circuit in *De Lara Bellajaro* held that when both § 1421(c) and § 1429 are triggered—namely, when a naturalization applicant seeks review of a decision denying her application on the ground that removal

---

[11] As discussed in footnote 10, Yemer's inclusion of E.Y.B. as her child on Form N-400 indicates that, by the time of her naturalization application, Yemer was aware of her obligation to report that E.Y.B. was her daughter and thus that she provided false information to a government official when she denied having children.

10

proceedings are pending, which is not the case here—review pursuant to § 1421(c) is limited to the threshold issue of whether removal proceedings are pending against the applicant. *De Lara Bellajaro*, 378 F.3d at 1046–47. If removal proceedings are pending, review pursuant to § 1421(c) terminates. *Id.* This is because § 1429 limits the scope of review and the relief available under § 1421(c) by barring consideration of the merits of the naturalization application. *Id.*. The Ninth Circuit did not, as Yemer now requests, conclude that district courts can review only a portion of the merits of a naturalization application. *Id.* at 1046. Nor did the Ninth Circuit hold that § 1421(c) review is limited in scope in the absence of pending removal proceedings. Accordingly, Yemer's argument that *De Lara Bellajaro* limits judicial review of the denial of a naturalization application to the bases on which USCIS denied the application when there is not a pending removal proceeding extends the decision beyond its scope.

Furthermore, the INA provides that "the court . . . shall, at the request of the petitioner, conduct a hearing *de novo* on the application." 8 U.S.C. § 1421(c). The statute thus explicitly provides for *de novo* review of the naturalization application, not merely review of the USCIS's decision denying the application. Indeed, several circuits have explicitly stated that the scope of review under 8 U.S.C. § 1421(c) is not limited to the administrative record. *See Kariuki v. Tarango*, 709 F.3d 495, 502 (5th Cir. 2013); *Chan v. Gantner*, 464 F.3d 289, 291 (2d Cir. 2006). It is true, as Yemer points out, that § 1421(c) authorizes "[a] person whose application for naturalization . . . is denied, . . . [to] seek review of such denial . . . . Such review shall be *de novo* . . . ." 8 U.S.C. § 1421(c). Yemer argues that because "such review" refers to the denial, that review is limited to the bases on which USCIS denied the application. However, the statute's final directive—that "the court . . . shall, at the request of the petitioner, conduct a hearing *de novo* on the application"—is clear and must be given its full effect, namely that the *de novo* hearing is *on*

*the application,* and not merely the USCIS's denial of application. *Id.* Consistent with this view, the Fifth Circuit has explained that the first reference to *de novo* "simply explains that the deferential 'arbitrary and capricious' standard often applicable to administrative reviews does not apply in this context." *Kariuki v. Tarango,* 709 F.3d 495, 502 (5th Cir. 2013). The latter reference to *de novo* "clarifies that review is not limited to the administrative record." *Id.* Moreover, Yemer's contention plainly contradicts the Supreme Court's assertion that "it has been universally accepted that the burden is on the alien applicant to show h[er] eligibility for citizenship in every respect." *Berenyi v. Dist. Dir., INS,* 385 U.S. 630, 637 (1967). Were review limited to the bases on which USCIS denied Yemer's application, Yemer would effectively and impermissibly be relieved of her obligation to establish her "eligibility for citizenship in every respect." *Id.*

Yemer next argues that she did not make a false statement when she said she did not have children because E.Y.B. is not a "child" under the INA. The INA defines "child," as relevant here, as "an unmarried person under twenty-one years of age who is a child born out of wedlock, by, through whom, or on whose behalf a status, privilege, or benefit is sought by virtue of the relationship of the child to its natural mother." 8 U.S.C. § 1101(b)(1)(D). According to Yemer, because E.Y.B. was born out of wedlock and no status, privilege, or benefit was sought by, through, or on behalf of E.Y.B. by virtue of E.Y.B.'s relationship to Yemer when Yemer filled out the visa application forms, E.Y.B. was not a "child" under the INA. As such, Yemer argues, Yemer's "NA" response to Form DS-230's instruction that she list "ALL children" was not false, nor was her oral statement to the consular official that she did not have children. This argument fails because the INA's definition of "child" does not apply to Form DS-230 or to the consular official's and Yemer's oral references to "children."

The INA's definition of "child" does not apply to Form DS-230's reference to "children," as evidenced by the INA's text, Form DS-230's context, and the anomalous result Yemer's interpretation would produce. First, the INA stipulates that the definition of "child"[12] applies "[a]s [the term is] used in subchapters I and II" of the INA. *Id.* The definition does not purport to apply to references to "children" in immigration forms, nor does Yemer argue that Form DS-230 references the INA's definition. Such a reference would be expected if the INA's definition of "child" were intended to apply to Form DS-230 because of the length and complexity of the INA's definition. Indeed, the INA's definition of "child" contains seven subsections—some with multiple subparts—and spans 8 U.S.C. § 1101(b)(1)(A)–(G). Given the length and complexity of this provision, it would be strange indeed for "children" in Form DS-230 to refer only to these seven precise categories of "child" in the INA despite no mention of these categories on Form DS-230. Second, the context in which "children" appears in Form DS-230 confirms that the ordinary meaning of "children," and not the INA's definition, applies to that form. Specifically, Form DS-230 instructs applicants to "List Names, Dates and Places of Birth, and Addresses of ALL Children." The emphasis on "ALL" indicates that "children" is to be interpreted broadly. This emphasis makes little sense if "children" is interpreted under the limiting definition in 8 U.S.C. § 1101(b)(1)(D).[13] Finally, Yemer's approach would allow applicants to choose whether to include

---

[12] The INA contains a separate definition of "child" that applies to subchapter III of the Act. *See* 8 U.S.C. § 1101(c)(1). All references to the definition of child in this memorandum opinion refer to the definition of "child" that applies to subchapters I and II and is located at 8 U.S.C. § 1101(b)(1)(A)–(G).

[13] The State Department's then-applicable eDV Program regulations similarly implied that the INA's definition of "child" did not apply to the eDV Form. Although Yemer's responses on her eDV Form are not dispositive here, the regulations underscore that references to "children" in immigration forms are not necessarily controlled by the INA's definition of "child." Specifically, the then-applicable eDV Program regulations provided that the eDV Form must include "[t]he name[s], date[s] and place[s] of birth and gender of the petitioner's . . . child[ren], if any, . . . regardless of whether or not they . . . intend to accompany or follow to join the petitioner should the petitioner immigrate to the United States." 22 C.F.R. § 42.33(b)(1)(v) (2008). This regulation implies that "child[ren]" on the eDV Form is not limited to the INA's definition of "child." The INA's definition of "child" includes children born out of wedlock only if "a status, privilege, or benefit is sought" "by, through . . . , or on . . . behalf" of the child "by virtue of the relationship of the child to its natural mother or to its natural father if the

13

biological children born out of wedlock on their immigration forms, an anomalous result. Indeed, such an approach could allow aliens to circumvent the statutory cap on diversity visas, further confirming that the INA's definition of "child" was not intended to apply Form DS-230. This is because derivative diversity visas issued to the spouses and children of diversity visa lottery winners count toward the total number of diversity visas awarded each year. *See* 8 U.S.C. § 1151(e) (authorizing the award of 55,000 diversity visas each year); 8 U.S.C. § 1153(d) (entitling the spouse and children of a diversity visa lottery winner to the same right of admission as the lottery winner). The statutory cap on the number of available diversity visas may be circumvented by diversity visa lottery winners who fail to disclose their immediate family members on their visa application and later petition for visas for these family members under a separate category. *See* 8 U.S.C. 1153(a)(1)–(2) (providing separate caps on the number of visas granted to the spouses and children of citizens and lawful permanent residents). Accordingly, it is evident that the INA's definition of "child" does not apply to Form DS-230's reference to "children."

Moreover, even assuming, *arguendo*, that "children" on Form DS-230 referred only to children captured by the INA's definition of "child," Yemer still gave false testimony. She admits that, when asked by the consular official at her visa interview in November 2009 whether she had any children, Yemer "told them that I don't have children." Admin. R. 25. It defies credulity to contend—and, indeed, Yemer does not argue—that the consular official's oral question referred

---

father has or had a bona fide parent-child relationship with the person." 8 U.S.C. § 1101(b)(1)(D). The eDV regulations, by contrast, require an applicant to list all children, "regardless of whether or not they . . . intend to accompany or follow to join the petitioner should the petitioner immigrate to the United States." Thus, the eDV regulations specifically require disclosure of children who do not seek immigration benefits, whereas the INA definition does not include such children if they are born out of wedlock. It makes little sense to conclude the eDV Form—which specifically requires disclosure of children who do not seek immigration benefits—was meant to exclude children born out of wedlock who do not seek immigration benefits, particularly in the absence of any reference to the to the child's legitimacy in the form or regulations. It thus cannot be concluded that the INA's definition of "child" was intended to apply to immigration forms.

only to children that fall within one of the seven subcategories of children in 8 U.S.C. § 1101(b)(1)(D). Accordingly, Yemer's argument is unsuccessful.

Finally, Yemer argues that a materiality requirement should be read into the question whether an applicant has ever given any U.S. government official(s) any information or documentation that was false, fraudulent, or misleading when determining whether that applicant is precluded from being found to have good moral character under § 1101(f)(6). The Supreme Court rejected a similar argument in *Kungys v. United States*, 485 U.S. 759 (1988). Indeed, the *Kungys* Court emphasized that § 1101(f)(6) "denominates a person to be of bad moral character on account of having given false testimony *if [s]he has told even the most immaterial of lies* with the subjective intent of obtaining immigration or naturalization benefits." *Kungys*, 485 U.S. at 780 (emphasis added). Yemer's argument that a materiality requirement should be read into the question in the context of determining whether false testimony has been given under § 1101(f)(6) must thus be rejected.

**B.**

USCIS next argues that the denial of Yemer's naturalization application should be upheld because Yemer was not lawfully admitted as a permanent resident, as required by 8 U.S.C. § 1427(a)(2). *See also* 8 U.S.C. § 1429. Because USCIS is correct that Yemer cannot establish that she is of good moral character, it is unnecessary to reach or decide whether Yemer was lawfully admitted as a permanent resident.

**IV.**

To be sure, it's unfortunate that Yemer's path to citizenship foundered at the end. But, as the Supreme Court has explained,

> when an alien seeks to obtain the privileges and benefits of citizenship, . . . [sh]e is the moving party, affirmatively asking the Government to endow h[er] with all the

advantages of citizenship. Because that status, once granted, cannot lightly be taken away, the Government has a strong and legitimate interest in ensuring that only qualified persons are granted citizenship. For these reasons, it has been universally accepted that the burden is on the alien applicant to show h[er] eligibility for citizenship in every respect.

*Berenyi v. Dist. Dir., INS*, 385 U.S. 630, 636–37 (1967). Yemer has failed to satisfy that burden,

and the undisputed factual record does not disclose a triable issue of fact. Accordingly, and for the

reasons discussed above, USCIS's motion for summary judgment must be granted, and Yemer's

motion must be denied.

An appropriate Order will issue.


Alexandria, Virginia
February 12, 2019

/s/
_____
T. S. Ellis, III
United States District Judge